LoriNG-, J.,
delivered the opinion of the court:
The petitioner claims against the United States the amount due on a contract authorizing them to make and use the Sibley tent.
*119 And tlie. court find tbe facts to be—
1st. On tbe 22d of April, 1856, letters patent were issued to H. H. Sibley for an improved conical tent, since known as tbe Sibley tent.
2d. On tbe Otb of February, 1858, General Charles Thomas, assistant quartermaster general, at Philadelphia, in a letter addressed to W. E. Jones, esq., agent for the Sibley patent tent, said as follows:'
“Sis: I have received information from the Quartermaster General that the Sibley tent may be adopted into the service provided a satisfactory arrangement can be made for the use of the patent, or for the tent, at a reasonable rate.”
And after stating what he thinks to be for the interest of the parties, he thus proceeds:
“ Under this view of the case, I have to propose that the department pay you the sum of $5 for each tent made for the use of the army, the number not less than 200 annually, as long as this agreement may be confirmed by the War Department. I will be pleased to receive a reply to this proposition. Should it be accepted, I shall at once stop making any more of the common tents at present in use, until my proposition shall have received the sanction or disapproval of the War Department.
UI think I may state with safety that it will be approved} and should it be, you will be in receipt of thousands of dollars without care or trouble, where you are now of hundreds.”
To this letter Mr. Jones replied as follows:
“ Philadelphia, February 6,1858.
“Sm: In' reply to your letter of this date I would respectfully state that in my opinion the amount you offer ($5 per tent) is not the worth of the right to make the Sibley tent.
“ I have already made an arrangement with General Jesup by which he pays me $10 per tent, making 50 of them, nor do I believe I have charged him more than the right is worth. I am ready to make a permanent arrangement at this rate, but as you express a belief that the manufacture would be commenced at once, at the rate of $5,1 am willing to enter into a temporary arrangement of that nature; in other words, after the completion of the Sibley tents now being made, you are authorized to make as many of the Sibley tents as the government may require,. by paying me $5 for each tent, and this arrange *120 ment bolds good until, the 1st of January, 1859, and longer unless notified to tbe contrary by me.
“"Very respectfully, your obedient servant,
“W. E. JONES.
“ Col. Charles Thomas,
“Deputy Quartermaster General, TJ. S. Army.”
3d. On-the 18th day of February, 1858, the terms proposed in the letter of Mr. Jones, above quoted, were approved by the Secretary of War, and, according thereto, a contract was made between the United States and W. E. Jones, as the agent of the Sibley tent patent, by which the United States were authorized to make.and procure as many of the Sibley tents as the government might require by paying $5 for each tent, and this arrangement was to hold good until the 1st of January, 1859, and longer, unless the United States were notified to the contrary. And the Sibley tent was adopted as one of the tents for the army, by the Army Begulations.
4th. And on the 16th day of April, 1858, the following agreement was made between the said Sibley and the petitioner:
“ This agreement, made this 6th day of April, 1858, between Major H. H. Sibley, United States army, captain 2d dragoons, of the first part, and Lieutenant William W. Burns, 5th Infantry, United States army, of the second part, wituesseth :
“That said Henry H. Sibley, in consideration of the covenants on the part of the party of the second part, hereinafter contained, doth covenant and agree to and with the said William W. Burns that he, Henry H. Sibley, has assigned and set over, and does hereby assign and set over, unto the said William W. Burns the one-half interest in all the benefits and net profits arising from and belonging to the invention of a certain improved conical tent, known as the 1 Sibley tent/ from and after the 22d day of February, 1856, forever,* and he, the said Henry H. Sibley, will in this partnership do all in his power consistent with his well-being and other interests to advance and promote the interests of the concern. And the said William W. Burns, in consideration of the covenants on the part of the party of the first part, doth covenant and agree to and with the said Henry H. Sibley, that he, the said William W. Burns, has assigned and set over, and does hereby assign and set over, his services, efforts, and labors during the months of December, *121 January, February, March, and April, 1855 or 1856, in perfecting the drawings and descriptions of said tent, in superintending the manufacture of two model tents and 21 others, making-such improvements and modification as the nature of the material and other circumstances suggested, so as to give the invention a reputation for durability, utility, and cheapness, and thereby the approbation and notoriety it deserved. And he will in this partnership do all in his power, consistent with his well-being- and other interests, to advance and promote the interests of the concern, considering himself the working member in attending to all the active operations either in the manufacture or sale of the tent. This not being intended, of course, to exclude or exempt the party of the first part from having a general control and direction of all important transactions connected therewith.
“ In witness whereof, we have hereunto set our hands and seals, this 16th day of April, 1858.
“ II. H. SIBLEY, [L. s.] ,

ilOa/pt. and JBvt. Maj. 2d Dragoons.

“WM. W. BURNS,

“First Lb 5th Inf ambry?

5th. Soon after hostilities commenced between the United States and the confederates, Major Sibley resigned his commission in the army of the United States and joined the confederates. Major Burns remained true to his allegiance and served in the army of the Union.
6th. On the 22d day of August, 1861, General Meigs, Quartermaster General, instructed General Thomas, assistant quartermaster general at Philadelphia, under whose directions Sib-ley tents were made and contracted for for the United States, as follows:
“Quartermaster General’s Oeeice,
“ Washington, D. 0., August 22,1861.
“ Colonel: The case of the claim of Captain W. W. Burns to the 1royalty of the Sibley tent ’ having been examined by this department, it is considered that Captain Burns is entitled to one-half of the royalty, as originally fixed between the government and Major Sibley, the inventor. It is accordingly directed that you pay to Captain, (now Major) W. W. Burns, United Stares Army, or to his accredited agent, the sum of $2 50 on *122 each and every tent of that peculiar description manufactured by the government, whether at its own establishment or through the agency of contractors — of course all contracts to be made with this understanding. The other half of the original royalty, formerly paid to Major H. H. Sibley, United States army, will for the future be withheld, as well as all that may be due him, for in consequence of the defection of that officer it is considered that all his right and title thereto reverts to the government.
“M. 0. MEIGS,

u Quartermaster General.

“Col. Chas. Thomas,

uAssistant Quartermaster General, Philadelphia?

7th. And on the 23d day of August, 1861, Quartermaster General Meigs, by the following order addressed, to Colonel Vinton, at New York, under whose direction Sibley tents were then made and contracted for for the United States, instructed him as follows:
“ QUARTERMASTER GENERAL’S OEEICE,
“ Washington, B. G., August 23,1861.
The royalty will depend on the terms of the contract.
No man has a right to make a patented article without permission of patentee.
“No man can sell one without permission. None can use one without permission.
“Colonel Thomas can inform you of the state of this matter. He has been in the habit of paying the royalty, but he has made the tents. The royalty has been $5 per tent, of which, since the defection of the patentee, only $2 50 have been paid, and that to Captain Burns, who is half owner of the patent.
I am, respectfully,
“M. C. MEIGS,
“ Quartermaster General.
“ Col. D. H. Vinton,

“Deputy Quartermaster General, New Yorlc?

8th. Ou the 26th of October, 1861, Quartermaster General Meigs submitted to the Secretary of War the following communication :
“Quartermaster General’s Oeeioe,
“ Washington, October 26, 1861.
“ Sir : I have the honor to call the attention of the honorable *123 Secretary of War to paragraph 1002 Revised Regulations of the Army, 1861, and in connection therewith the matter of the ‘royalty’ allowed to Major W. W. Burns, of the commissary department, United States army, on the ‘ Sibley tent.’
“ The records of this office show that in February of 1858 an arrangement was entered into by Colonel Charles Thomas, assistant quartermaster general, and Mr. W. E. Jones, agent of Sibley, the patentee of the ‘ Sibley tent,’ and approved by the then Secretary of War, that for the use of said patent the government was to pay $5 on each tent manufactured by the government.
“It is also shown that Major W. W. Burns, United States army, was admitted to an equal share in the profits thus arising from the manufacture of these tents.
“ The inventor, Major H. H. Sibley, resigned his commission about the beginning of our present troubles, leaving Major W. W. Burns the only loyal citizen invested with the right of this ‘royalty.’
“ This department, acting under the decision of the predecessor of the honorable Secretary of War, has thus far allowed Major Burns $2 50 ‘ royalty.’
“ For convenient consultation paragraph 1002 is copied. See below. ■
“ M. C. MEIGS,

“Quartermaster General.

“Hon. SIMON Cameron,

“Secretary of War.

“‘1002. No officer or agent in the military service shall purchase from any other person in the military service, or make any contract with any such person to furnish supplies or services, or make any pinchase or contract in which such person shall be admitted to any share or part, or to any benefit to arise therefrom.’ ”
“Upon this communication Secretary Cameron indorsed as follows:
“ ‘ No further payments will be made to Major W. W. Burns on account of “ royalty” on the “ Sibley tent.”
“‘SIMON CAMERON,
“ ‘Secretary of War.
“ ‘ War Department, December 26,1861.’”
*124 9th. This order was communicated to officers of the War Department as above shown, and was not communicated to the petitioner or the patentee, Major Sibley; and from its date no payments on account of the royalty were made, and the last payment on account of the royalty shown to be made was on September 3,1861, and was of $515, paid to the petitioner, W. ■ W. Biums, for his moiety of the royalty ($2 50) on 206 tents.
10th. After 22d of February, 1856, (the date to which the title of the petitioner in the royalty relates by the terms of the contract made between him and Major Sibley,) the United States made the Sibley tents at their arsenals and caused them to be made by contracts with individuals, 'and the whole number thus procured was. 47,541
Of these the United States, prior to December 26,1861, paid the royalty on. 3,849
Leaving unpaid, and on which one-half of the rojmlty is claimed here.1. 43, 692
Of these the United States made, prior to December 26, 1861.-.. M ^
After December 26,1861. —3 bO
The United States contracted for, prior to December ‘26,1861 .•..;. 38,158
After December 26, 1861.. 588
11th. Of the tents contracted for, 1,600 tents were contracted by Colonel Vinton, on behalf of the United States, with the written stipulation between him and the contractor that the United States retain $2 50 out of the price of each tent, to be paid by the United States to Major Burns in behalf of the royalty thereon. And 10,299 tents were contracted for by Colonel Vinton with the specification and description following, viz: “ 18 feet diameter, 13 feet high, with pole, iron .tripod, and chains complete, (without royalty.”) And 3,195 tents were contracted for by Colonel Vinton, orally, with the understanding between him and the contractors that they were to pay or be responsible for the royalty on the tents furnished by them respectively; and the royalty on the said 3,195 tents is not included in the judgment hereinafter rendered, because *125 as to tliese the majority of judges concurring in the judgment differ as to the defendants’ liability.

Conclusion of fact.

And on these facts a majority of the court are of opinion that the United States are indebted to the petitioner for one-half of the royalty of $5 on each of 40,497 tents.

Opinion.

It was contended, on the part of the United States, that the contract between them and Major Sibley was void by the army regulation No. 1002, which forbids contracts made by “an officer or agent in the military service” “with any other person in the military service.” But this contract was made by the Secretary of War, and he is a civil officer, and all his duties are civil duties, and he is not within the terms or purview of the army regulation referred to.
It- was also contended, on the part of the United States, that the contract between them and Major Sibley was determined by the order of Secretary Cameron of December 26th, 1861, that no further payments on account of the royalty should be made to Major Burns, and that consequently his claim was limited to the number of tents made and procured before December 26,1861.
But the contract provided how it might be determined, viz : by notice given to the United States by the patentee. This placed the duration of the contract within his control; while the United States might at any time determine their liability by ceasing to make the tents. And this was all the contract provided for.
And Ave think it is not shown that either party sought to determine the contract. It is certain the United States needed the tents they procured, and Major Burns desired the royalty on them. It Avas argued, on behalf of the United States, that the contract Avas determined on the part of the United States by the order of Secretary Cameron to the officers of his departments stopping the payment to Major Burns. But the Secretary’s language does not reach to that; and his action is inconsistent with any such purpose; for he continued to make and procure the tents, and this he could not do, legally or honestly, *126 except under tbe contract, because of tbe patent. And it is not to be presumed that be intended to violate tbe law and disregard tbe rights secured by tbe patent, and it is certain that be could not commit tbe United States to any sucb wrongful procedure. And we tbink tbe legal presumption is, that tbe Secretary intended to act according to law and within bis official power; and our inference from bis language and acts is that be intended to secure tbe tents tbe service needed, and leave tbe rights of tbe parties to be determined by tbe judicial tribunals, to whom tbe question belonged; and that be stopped tbe payments on tbe contract to make tbe action of bis department safe to tbeUnited States at all events.
And we tbink that if, in tbe absence of evidence, it could be assumed that the facts that tbe Secretary bad given this order to tbe officers of bis department, and also continued to make tbe tents, bad come to tbe knowledge of Major Bums, it would have been notice to him of nothing more than we have inferred.
It was also contended, on behalf of tbe United States, that this court bad no jurisdiction of this case, because we cannot entertain a suit for tbe infringement of a patent; and Pitcher’s case, 1 O. Cls. B., p. 7, was referred to. But this suit is not brought for tbe infringement of a patent, nor for tbe unauthorized use of a patented invention, but upon a special contract with *a patentee, whereby tbe use of tbe invention by tbe United States was authorized, and agreed to be paid for. Pitcher’s case, therefore, is not like this. In Pitcher’s case there was nothing but an unauthorized use by an officer of tbe United States. And where an officer of tbe United States, without authority from them, uses in their service a patented invention, tbe act being unlawful is bis and not theirs, and be and not they are responsible for it.
It was also contended, on behalf of tbe United States, that by > tbe assignment made by Major Sibley to Major Burns they ' became thereupon joint owners of tbe contract, and joint creditors for all claims arising under it, and as sucb joint creditors must sue jointly and not severally; and that therefore this sole action by Major Burns for bis half of tbe royalty due to him and Major Sibley could not be maintained. But tbe United States themselves severed tbe claims of Major Burns from tbe claim of Major Sibley. For by tbe act of 3d March, 1863, chapter 92, tbe United States barred Major Sibley of any action here *127 either joint or several, because of Ms disloyalty. And as the act, does not purport, and cannot, merely to save a rule of pleading here, where we have no rules of pleading, be implied to forfeit or affect the rights or interests of loyal citizens, it necessarily severs their claims from those it makes not suable here.
And in this case our conclusions of law are:
1. That the contract between the United States and Major Sibley made the 18th day of February, 1858, was valid in law, and was not determined by the order of Secretary Cameron of December 26, 1861.
2. That the assignment of Major Sibley to the petitioner, made the 16th day of April, 1858, was valid in law. And that by that and the facts above found, the petitioner became entitled to one-half of the royalty of $5 on 40,497 tents, made and procured by the United States as above stated.
3. That this sole action of the petitioner for said one-half of the royalty is well brought under act of 3d March, 1862, chapter 92.
Judgment is to be entered for the petitioner for one-half of the royalty, or $2 50 on each of 40,497 tents, amounting to the sum of $101,242 50.